QUINCE, J.,
concurring in part and dissenting in part.
I concur with my colleagues that Oliver is not entitled to relief on the majority of his claims. However, I disagree with the analysis set forth by the majority in denying Oliver’s claims that the trial court (1) abused its discretion in admitting testimony regarding a shotgun that was not used to commit the killings and allowing, the shotgun to be published to the jury and (2) erred in finding that the murder of Richardson was committed in a cold, calculated, and premeditated manner. I would also find that Oliver is entitled to a new penalty phase under Hurst.
Introduction of the Shotgun
First, I do not agree that the trial court did not abuse its discretion in admitting testimony regarding the shotgun and in allowing the shotgun to be published to the jury when it indisputably was not the murder weapon. Although the shotgun was relevant to the timeline of events surrounding the crime, it was not relevant to a material issue in dispute at the time it was allowed. Despite this, the error in admitting the shotgun is harmless.
Harmless Error
Once error has been established, the inquiry is “whether there is a reasonable possibility that the error affected the verdict.” State v. DiGuilio, 491 So.2d 1129, 1139 (Fla. 1986). This burden remains on the State. Id. at 1135. This analysis requires this Court to consider both “the permissible evidence on which the jury could have legitimately relied” and “the impermissible evidence which might have possibly influenced the jury verdict.” Id. In determining that an error is harmless, an appellate court must find beyond a reasonable doubt that the error did not contribute to the verdict. Id.
In light of the other evidence that the jury could have relied on that connects Oliver to the murders, there is no reasonable possibility that the erroneous admission of the shotgun evidence affected the verdict. The jury heard testimony from Watkins, who described the contentious relationship between Oliver and Pinson. Watkins also stated that Oliver wanted to speak to Pinson prior to the killings because he was concerned that Pinson was cooperating with the police in connection with a pending warrant in a different county. In addition, Watkins recalled Oliver threatening to “do something” to Pinson, *622 prior to the murders. Camiscioli testified that Oliver confessed to the killings and told her the motive for the killings and the manner they were carried out, which coincides with the physical evidence obtained from the scene. Oliver also told Camiscioli that he did not expect to get caught because the police would assume that the killings were part of a robbery. Pouncey testified that when he walked into the master bedroom, he could see all of the dresser drawers pulled out. Both Camisci-oli and Wilson told the jury about when and where they observed the defendant dispose of, what later turned out to be, the murder weapon.
Testimony regarding the shotgun was used to provide the jury with a timeline of the events following the murder. However, the direct evidence of guilt against Oliver would have reasonably persuaded the jury to find Oliver guilty of both murders, despite any error in the introduction of the shotgun testimony. Therefoi’e, any error in admitting testimony regarding the shotgun is harmless.
Feature of the Trial
Oliver claims that the shotgun improperly became a feature of the trial, as the trial court allowed numerous witnesses to testify regarding his possession of the shotgun before it was ultimately entered into evidence. To determine whether evidence of collateral bad acts or wrongs became a feature of a trial, this Court does not solely measure the number of references that the prosecution made to such evidence. Wright v. State, 19 So.3d 277, 293 (Fla. 2009). However, numerous references to prior bad acts by the defendant “may indicate a prohibited transgression, even if it is not the sole determining factor.” Id. Evaluating the purpose for which the State references the evidence of prior bad acts in its closing argument may also assist in determining whether the evidence was a feature of the trial. Id. at 294.
The shotgun being displayed to the jury did not become a feature of the trial. Of the seventeen witnesses that testified for the State, six of them mentioned the shotgun. None of those witnesses provided voluminous testimony regarding the shotgun. Both Camiscioli and Wilson briefly testified that they saw Oliver in possession of the shotgun immediately prior to possessing the murder weapon. One detective testified that the shotgun was recovered from the same home in Cocoa, where Wilson and Camiscioli had reported the murder weapon was retrieved. A crime scene technician, crime scene analyst, and retired officer testified regarding the process of collecting Oliver’s DNA, and the fact that he could not be excluded as contributing to the DNA found on the shotgun.
The State mentioned the shotgun three times in its guilt phase closing argument. One reference purported to illustrate the limited amount of discrepancies between Oliver’s timeline surrounding the shotgun and that of Camiscioli and Wilson. The other two references to the shotgun were to acknowledge that , Oliver admitted to possessing the shotgun. The evidence relating to the shotgun did not “outweigh the evidence directly relating to the crime charged.” See Snowden v. State, 537 So.2d 1383, 1386 (Fla. 3d DCA 1989). Therefore, it does not appear that these references were so voluminous as to consider the shotgun a feature of the trial.
CCP as to Andrea Richardson
Second, the trial court’s finding of CCP as to the killing of Richardson is not supported by competent, substantial evidence in the record.' But that error is harmless. “When this Court strikes an aggravating factor on appeal, ‘the harmless error test is applied to determine whether there is no reasonable possibility that the ei-ror affect *623 ed the sentence.’” Turner v. State, 37 So.3d 212, 226 (Fla. 2010) (quoting Jennings v. State, 782 So.2d 853, 863 n.9 (Fla. 2001)).
In this case, the trial court found four aggravating circumstances applicable to both deaths: (1) the defendant was previously convicted of another capital felony or a felony involving the use or threat of violence to a person; (2) the capital felony was committed while the defendant was engaged in a burglary; (3) the capital felony was committed for the purpose of avoiding or preventing a lawful arrest; and (4) the murders were committed in a cold, calculated and premeditated manner without any pretense of moral or legal justification. The trial court gave all of these aggravators great weight. Further, the trial court gave Oliver’s five nonstatu-tory mitigators “little” to “some” weight. In light of the weight of the aggravation against the mitigation, there is no reasonable possibility that the trial court’s decision to follow the unanimous jury verdict and sentence Oliver to death would have been affected if the trial court had not found the CCP aggravator as to the killing of Richardson.
Hurst v. Florida
Finally, I cannot agree with the majority’s conclusion that the Hurst error in this case is harmless beyond a reasonable doubt. Because I would find that the Hurst error in this case requires a new penalty phase, I dissent.
In Hurst, 202 So.3d at 69, we declined to speculate why the jurors voted the way they did; yet, here, the majority finds that the unanimous “recommendation allows us to conclude beyond a reasonable doubt that a rational jury would have unanimously found that there were sufficient aggra-vators to outweigh the mitigating factors.” Majority op. at 619 (quoting Davis, 207 So.3d at 174-75).
Although the jury unanimously recommended a death sentence, we cannot know which aggravating factors the jury found or that the jury found each aggravating factor unanimously. Because two of the aggravators found by the trial court for the murder in this case—that the capital felony was committed to avoid arrest (as to both victims), and that the murders were committed in a cold, calculated and premeditated manner—require specific factual findings, Hurst requires that the jury, not the trial judge, make that determination. The jury made no such determination in Oliver’s case.
By ignoring the record and concluding that all aggravators were unanimously found by the jury, the majority is engaging in the exact type of conduct the United States Supreme Court cautioned against. See Hurst v. Florida, 136 S.Ct. at 622. Because the harmless error review is neither a sufficiency of the evidence review nor “a device for the appellate court to substitute itself for the trier-of-fact by simply weighing the evidence,” see DiGuilio, 491 So.2d at 1139, I cannot conclude beyond a reasonable doubt that the error here was harmless, and I would vacate Oliver’s unconstitutional death sentence and remand for resentencing. See Hurst, 202 So.3d at 69.